IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson September 1, 2015

## MORGAN MOORE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**No. CR1522014     Dee David Gay, Judge**

_____

**No. M2015-00139-CCA-R3-PC – Filed October 6, 2015**

_____

Petitioner, Morgan Moore, entered guilty pleas to first degree murder and criminal responsibility for first degree murder for his involvement in the murders of his parents. He received concurrent sentences of life in prison. He thereafter filed a timely petition for post-conviction relief alleging that trial counsel failed to properly inform him of the nature and consequences of his guilty pleas, specifically, the length of a life sentence, and that as a result, his guilty pleas were not entered knowingly, intelligently, and voluntarily. Following an evidentiary hearing, the post-conviction court denied relief, and this appeal follows. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Micah Cagney Ketron, Gallatin, Tennesse (at evidentiary hearing); and Christopher V. Boiano, Nashville, Tennessee (on appeal), for the Appellant, Morgan Moore.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Lytle Anthony James and Tara Wyllie, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

#### A. Guilty Plea Submission Hearing

At the February 19, 2013 guilty plea submission hearing, the State advised the court that petitioner was charged in a four-count indictment with two counts of first degree murder, one count of theft of property valued at greater than $10,000 but less than $60,000, and arson. Pursuant to the plea agreement, petitioner would plead guilty to one count of first degree murder, one count of criminal responsibility for first degree murder, and the remaining counts of the indictment would be dismissed. The two sentences were to be served concurrently. The State set forth the following factual basis for the pleas:

> [Petitioner], along with Chase Vinson, conspired to kill his parents. On that day – the days leading up to that, there were text messages between [petitioner] and [Vinson] where they were trying to get – they termed it "a piece" for this murder. On the night of the incident, right up to the incident, [petitioner] was exchanging text messages with [Vinson] just right up to the time of the murder.
>
> After [petitioner] committed – according to his own statement that he gave to the Sumner County Sheriff's Department the day after the murder, his statement was that he had taken a .38 caliber revolver; that he had shot his father, then handed the revolver to [Vinson] and said, ["][F]inish this;["] and [Vinson] then killed his mother. He said the reason for that was that he could not kill his mother.

The trial court inquired into petitioner's background and health then began the plea colloquy. During the colloquy, petitioner indicated that he understood the contents of the petition to enter guilty pleas; that he understood the sentences to be imposed and the sentence alignment; and that he was entering his guilty pleas freely and voluntarily, without coercion. The court asked about petitioner's current medications and asked if those prescriptions affected petitioner's decision or his understanding of the proceedings, to which petitioner answered in the negative. The trial court placed on the record its perception of petitioner, stating that petitioner was responsive, well-oriented, and alert and that he understood the questions and understood the terms of the plea agreement. Petitioner agreed that trial counsel had offered him sound advice and good legal representation. Petitioner acknowledged that he was waiving the constitutional rights attendant to a jury trial and that he was entering the guilty pleas because he was, in fact, guilty.

B. Post-Conviction Evidentiary Hearing

Petitioner timely filed a petition for post-conviction relief, and the post-conviction court appointed counsel, who filed an amended petition. The post-conviction court held an evidentiary hearing on January 13, 2015, at which petitioner and trial counsel testified.

Petitioner stated that trial counsel represented him from the outset of the proceedings, which originated in juvenile court. When petitioner was arrested, he was seventeen years old and had completed the ninth grade. Although he enrolled in GED classes, he did not earn his certificate.

Petitioner acknowledged that trial counsel provided him with the discovery information supplied by the State but stated that trial counsel did not review with him the evidence against him. However, he admitted that through reading the discovery, he learned of the evidence against him, including text messages that were sent between him and his co-defendant, his personal journal, and a statement that his sister gave to law enforcement officers. He was also privy to reports from the Sumner County Sheriff's Department, which he reviewed.

Petitioner explained that trial counsel advised him that a life sentence was a term of twenty-five years or until petitioner died. He said that had he known that a life sentence was at least fifty-one years, he would not have agreed to the plea offer. He said, "That's stupid for a man to do something like that; to throw away his life like that." At the time of the plea, petitioner understood the difference between a life sentence and life in prison without the possibility of parole, but he thought that he would be parole-eligible after twenty-five years. Petitioner asserted that trial counsel informed him in the same manner "every time that [they] talked." He claimed that he was influenced to plead guilty because he "thought at the time if [he] only had to do 25 years, if maybe then [he] could actually get out, you know . . . that's a chance to get out." Petitioner said that trial counsel explained that the possible consequence of rejecting the plea offer was that the trial court would align the life sentences consecutively.

Petitioner further contended that the medication that he was taking at the time of the guilty plea submission hearing caused him to misunderstand his plea. He agreed that the doctor who performed his mental health evaluation found him competent to stand trial.

Upon questioning by the post-conviction court, petitioner agreed that at the plea submission hearing, he responded affirmatively when asked if trial counsel had reviewed with him the elements of the crimes, the possible punishments for the crimes, and the evidence against him. He agreed that he answered that he had all of the information necessary to make the decision to plead guilty. However, petitioner claimed that these statements were not true based on his lack of understanding at the time. When asked if petitioner told the psychiatrist that he wanted to plead guilty in exchange for concurrent sentence alignment, petitioner agreed that he "preferred to serve less time."

Trial counsel testified next and stated that he had practiced law for thirty-one years, primarily in the field of criminal defense. His representation of petitioner began in

juvenile court, and trial counsel estimated that he met with petitioner twelve to fifteen times during the course of the proceedings. Trial counsel provided petitioner with the discovery in his case and reviewed, specifically, petitioner's journal entry, which trial counsel opined would be used by the jury to establish premeditation. Petitioner was "adamant" about going to trial, and trial counsel told him that they would thoroughly review the discovery about a month prior to trial. However, petitioner changed his mind prior to that and decided to plead guilty. Before trial counsel would pursue a guilty plea, he insisted on having petitioner evaluated by a mental health professional to establish petitioner's competency. After trial counsel confirmed that petitioner was competent to stand trial and to decide whether to plead guilty, trial counsel continued to negotiate a plea offer. Trial counsel said that petitioner was motivated to plead guilty based upon a facsimile from the State that indicated it would seek consecutive alignment of the sentences if the case proceeded to trial and petitioner was found guilty.

Trial counsel stated that he explained to petitioner that because he committed the offenses while he was a juvenile, life in prison without the possibility of parole was not a potential sentence for him.[1] The only sentence that could be imposed was a life sentence, which was sixty years. Trial counsel told petitioner that after serving eighty-five percent of his sentence, or fifty-one years, he would be eligible for parole. Trial counsel emphasized that he had this conversation with petitioner on more than one occasion. He said that the only time he mentioned "twenty-five years" was when he explained to petitioner that if he were convicted of second degree murder instead, the range of punishment would be fifteen to twenty-five years to be served at 100% release eligibility. Trial counsel recalled that petitioner never expressed hesitation about entering his guilty plea after he decided to do so.

C. Post-Conviction Court's Ruling

The post-conviction court ruled on the petition from the bench following the evidentiary hearing. It made the following findings:

> At the hearing today, we have introduced five exhibits. I have read through each exhibit thoroughly[;] . . . I have considered the testimony of [petitioner], and I have considered the testimony of [trial counsel].
>
> . . . .

---

[1] In *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012), the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." (emphasis added).

In weighing the testimony of [petitioner] and [trial counsel], I find the testimony of [trial counsel] to be credible and believable. This Court makes a . . . finding of fact based on the testimony of [trial counsel] . . . .

. . . .

The facts show that [trial counsel] was appointed shortly after the first appearance in juvenile court, and he represented him about 17 months through the plea in criminal court . . . .

[Trial counsel] met with him a total of 12 to 15 times . . . . He had several phone calls from [petitioner] while he was in . . . detention . . . . He got all the discovery . . . .

. . . .

[Petitioner] was adamant that he wanted a trial with [trial counsel]. And [trial counsel] said that they would gear up before the trial. And [trial counsel] noticed that the defendant's attitude changed when he showed him the [fax] from General James saying that they would go for consecutive life sentences.

I credit the testimony of [trial counsel] when he said that they had extensive conversations about life and the time, that they were not concerned about life without parole; they were concerned about consecutive life sentences.

He said that he went over with [petitioner] specifically that a life sentence is 60 years at 80 [sic] percent, which equals 51 years. And this conversation occurred on more than one occasion. And this is borne out by what is stated and transcribed in the guilty plea and completely contrary to everything that [petitioner] testifies to from the witness stand today.

[Trial counsel] never mentioned 25 years in a first degree murder conviction. He did mention it in the context of the range for second degree murder, 15 to 25. He said that, all the way up to the plea, after he got Dr. Caruso on board to confirm his own conclusion, what he believed about the mental condition, that he was competent and knew what he was doing. After he had that confirmed, he said he never had any second thoughts about the plea. I find those to be the findings of fact in this particular case.

I find the following conclusions of law . . . .

-5-

[Petitioner] has not carried the burden of proving his allegations of fact by clear and convincing evidence. To the contrary, the reverse has been proven by clear and convincing evidence, that the lawyer's performance was not deficient, but he did a very good job in representing a young man that was charged with the most serious crime that anybody could ever come before this Court on, the killing of his own mother and father.

. . . .

But somehow when [petitioner] goes to the penitentiary, he changes his mind. And what he said today is not truthful and not credible. Therefore, the Court finds that the petitioner has not carried the burden of proof in the petition for post-conviction relief. The Court further finds that [trial counsel] did a very good job in representing [petitioner] in an extremely difficult situation. Therefore, the petition for post-conviction relief is dismissed.

Petitioner now appeals the denial of post-conviction relief.

## II. Analysis

Petitioner raises two issues for our review: (1) whether trial counsel rendered ineffective assistance in failing to adequately advise petitioner of the length of a life sentence and (2) whether petitioner's guilty plea was entered knowingly, intelligently, and voluntarily.

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*,

245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

## B. Issues

### 1. Trial Counsel Failed to Inform Petitioner of the Nature and Consequences of His Guilty Plea

The post-conviction court considered the testimony of petitioner and trial counsel and credited trial counsel's testimony that he fully informed petitioner that a life sentence was sixty years in length but that petitioner would be parole-eligible after serving eighty-five percent of the sentence, or fifty-one years. The post-conviction court further credited trial counsel's testimony that he only mentioned "twenty-five years" in relation to a conviction for second degree murder. The post-conviction court noted, in further support of the factual findings, that petitioner was adamant about going to trial until he learned that the State intended to seek consecutive alignment of his life sentences in the event of a jury conviction. Accordingly, petitioner changed his mind and sought to enter guilty pleas. The evidence does not preponderate against these findings of fact. We will not reassess the post-conviction court's determination of the credibility of witnesses, which is a matter entrusted to the post-conviction court as the finder of fact. *Dellinger*, 279 S.W.3d at 292; *R.D.S.*, 245 S.W.3d at 362. Petitioner is not entitled to relief on this claim.

### 2. Petitioner's Plea Was Not Knowingly, Intelligently, and Voluntarily Entered

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* Courts should consider the following factors when ascertaining the validity of a guilty plea:

(1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth, in pertinent part, the requirements for guilty pleas:

Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

(A)   The nature of the charge to which the plea is offered;

(B)   the maximum possible penalty and any mandatory minimum penalty;

(C)   if the defendant is not represented by an attorney, the right to be represented by counsel-and if necessary have the court appoint counsel-at trial and every other stage of the proceeding;

(D)   the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E)   the right to a jury trial;

(F)   the right to confront and cross-examine adverse witnesses;

(G)     the right to be protected from compelled self-incrimination;

(H)     if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)     if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)     if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1).

Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). In addition, Rule 11 requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.* Finally, the trial court must confirm that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3). Tennessee case law has further refined the requirements of a plea colloquy to include informing a defendant and ensuring that he understands that different or additional punishment may result from his guilty plea due to prior convictions or other factors and that the resulting conviction may be used for enhancement purposes in any subsequent criminal actions. *Lane*, 315 S.W.3d at 564 (citing *Howell*, 185 S.W.3d at 331).

As noted above, the trial court conducted a thorough plea colloquy during which petitioner indicated that he understood the contents of the petition to enter guilty pleas; that he understood the sentences to be imposed and the sentence alignment; and that he was entering his guilty pleas freely and voluntarily, without coercion. The court confirmed that petitioner's current medications did not affect petitioner's decision or his understanding of the proceedings. Petitioner agreed that trial counsel had offered him sound advice and good legal representation. Petitioner acknowledged that he was waiving the constitutional rights attendant to a jury trial and that he was entering the

guilty pleas because he was, in fact, guilty. The trial court scrupulously protected petitioner's constitutional rights in accepting his guilty pleas.

In addition, trial counsel assured that petitioner was competent to enter the guilty pleas. Even after having been previously subjected to a mental health evaluation, trial counsel sought and secured a second evaluation due to petitioner's change of heart from "adamantly" insisting on a trial to desiring to enter a guilty plea.

Moreover, petitioner's testimony at the post-conviction hearing was in direct conflict with his testimony at the guilty plea hearing. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). In this case, the post-conviction court credited petitioner's testimony during the guilty plea hearing over his testimony at the post-conviction hearing. In sum,

> [t]he evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of 'Buyer's Remorse,' in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002). The record before us, together with the post-conviction court's accrediting the testimony of trial counsel and specifically discrediting that of petitioner, belies petitioner's contention that his guilty pleas were not knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on the record as a whole, the briefs of the parties, and the applicable legal authorities, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE